# PETER R. ADAMS *v.* ALAN H. PECK

[No. 79, September Term, 1979.]

*Decided June 11, 1980.*

2

The cause was argued before MURPHY, C. J., and SMITH, DIGGES, ELDRIDGE, COLE, DAVIDSON and RODOWSKY, JJ.

*Peter Parker,* with whom was *Ronald L. Pollard* on the brief, for appellant.

*Charles E. Iliff, Jr.,* with whom were *John H. Mudd* and *Semmes, Bowen & Semmes* on the brief, for appellee.

DAVIDSON, J., delivered the opinion of the Court.

This case presents the novel question whether an absolute privilege applies to a defamatory statement published in a document which is prepared for possible use in connection with a pending judicial proceeding but which has not been filed in that proceeding.

In July, 1976, in the Circuit Court for Baltimore County, the appellant, Peter R. Adams (father), and Caryl W. Adams (mother), were engaged in a contested divorce proceeding. In August, 1976, they entered into a separation agreement in which the mother was granted custody of the two minor children and the father was granted visitation rights. In 1977, the mother raised questions concerning the advisability of continuing the father's visitation rights. The mother's attorney referred her and the children to the appellee, Alan H. Peck, M.D. (psychiatrist), for an evaluation. On 17 February 1977, the psychiatrist sent a written report to the attorney in which he expressed the opinion that the father had abused one of the children, and that he was "an ill man and in definite need of psychiatric treatment." Additionally, the psychiatrist urged "that all visitations with the father stop, and the father not be allowed to be around the children." Thereafter, the mother filed a Petition for Modification of Visitation Rights.

On 30 January 1978, in the Superior Court of Baltimore City, the father filed a declaration alleging that the psychiatrist had "falsely and maliciously defamed him" by

stating in a letter that he was ill and needed psychiatric treatment. On 19 July 1978, the psychiatrist filed a motion for summary judgment on the ground that the allegedly defamatory statement was absolutely privileged as a matter of law because it was made in connection with the pending divorce litigation. On 14 November 1978, the trial court granted the motion for summary judgment and entered judgment in the psychiatrist's favor. The father appealed to the Court of Special Appeals, which affirmed the trial court's judgment. *Adams v. Peck,* 43 Md. App. 168, 403 A.2d 840 (1979). We granted a writ of certiorari and shall affirm.

In Maryland, judges, attorneys, parties and witnesses are absolutely privileged [1] to publish defamatory matters during the course of a judicial proceeding. *Korb v. Kowaleviocz,* 285 Md. 699, 701-04, 402 A.2d 897, 898-99 (1979); *Hunckel v. Voneiff,* 69 Md. 179, 193, 14 A. 500, 504 (1888); *Maulsby v. Reifsnider,* 69 Md. 143, 162-64, 14 A. 505, 510-11 (1888). *See Kennedy v. Cannon,* 229 Md. 92, 97, 182 A.2d 54, 57 (1962) (dicta). *See generally* Prosser, *Law of Torts,* § 114 (1971). This absolute privilege protects the person publishing the defamatory statement from liability even if his purpose or motive was malicious, he knew that the statement was false, or his conduct was otherwise unreasonable. *Maulsby,* 69 Md. at 164, 14 A. at 511. *See Kennedy,* 229 Md. at 97, 182 A.2d at 57. It extends not only to defamatory statements made in the courtroom during the course of the trial, *Korb,* 285 Md. at 704, 402 A.2d at 899; *Maulsby,* 69 Md. at 164, 14 A. at 511, but also to such statements published in documents which have been filed in a judicial proceeding. *DiBlasio v. Kolodner,* 233 Md. 512, 520-23, 197 A.2d 245, 250-51 (1963) (declaration in prior suit); *Bartlett v. Christhilf,* 69 Md. 219, 227, 14 A. 518, 520 (1889) (petition); *Kerpelman v. Bricker,* 23 Md. App. 628, 634, 329 A.2d 423, 427 (1974) (letter of complaint to then

---

1. Defamatory statements made by judges, parties and witnesses are absolutely privileged even though they have no relation to the judicial proceeding. However, an attorney's defamatory statement is absolutely privileged only if it has some relation to the judicial proceeding. Korb v. Kowaleviocz, 285 Md. 699, 702-03, 402 A.2d 897, 898-99 (1979); Hunckel v. Voneiff, 69 Md. 179, 199, 17 A. 1056, 1057 (1889).

4

Grievance Committee of Maryland State Bar Association initiating a "judicial proceeding"). *See Kennedy,* 229 Md. at 97, 182 A.2d at 57. *See, e.g., Gilpin v. Tack,* 256 F. Supp. 562, 566 (W.D. Ark. 1966) (interrogatories); *O'Barr v. Feist,* 292 Ala. 440, 296 So. 2d 152, 154, 156-57 (1974) (physician's letter); *Todd v. Cox,* 20 Ariz. App. 347, 512 P.2d 1234, 1235-36 (1973) (affidavit); *Albertson v. Raboff,* 46 Cal. 2d 375, 380-81, 295 P.2d 405, 409 (1956) (notice of *lis pendens*); *McDonald v. Lakewood Country Club,* 170 Colo. 355, 366-67, 461 P.2d 437, 443 (1969) (criminal information); *Zirn v. Cullom,* 187 Misc. 241, 63 N.Y.S.2d 439, 440 (1946) (pleading in prior suit); *Jarman v. Offutt,* 239 N.C. 468, 472-74, 80 S.E.2d 248, 251-53 (1954) (affidavit). *See generally* Annotation: *Libel and Slander: Application of Privilege Attending Statements Made in Course of Judicial Proceedings to Pretrial Deposition and Discovery Procedures,* 23 A.L.R.3d 1172 (1969).

This Court has not previously considered whether an absolute privilege applies to defamatory statements published in documents prepared for possible use in connection with a pending judicial proceeding but which have not been filed in that proceeding. However, in *Kennedy,* 229 Md. at 97, 182 A.2d at 57, we stated in dicta:

> "[A]bsolute immunity extends ... for defamatory statements uttered in the course of a trial or contained in pleadings, affidavits, depositions, *and other documents directly related to the case.*" (Emphasis added.)

We shall here hold that ordinarily an absolute privilege applies to a defamatory statement published in a document which is prepared for possible use in connection with a pending judicial proceeding but which has not been filed in that proceeding. Courts in other jurisdictions which have considered similar questions agree. *E.g., Theiss v. Scherer,* 396 F.2d 646, 649-50 (6th Cir. 1968) (attorney's letter to another attorney); *McLaughlin v. Copeland,* 455 F. Supp. 749, 751-52 (D. Del. 1978) (attorney's letter to other attorneys); *Smith v. Hatch,* 271 Cal. App. 2d 39, 45, 76 Cal.

Rptr. 350, 354-55 (1969) (attorney's letter to client); *Anderson v. Matz,* 67 Ill. App. 3d 175, 384 N.E.2d 759, 761 (1978) (physician's report to insurance company); *Middlesex Concrete Products & Excavating Corp. v. Carteret Indus. Ass'n,* 68 N.J. Super. 85, 90-92, 172 A.2d 22, 24-26 (1961) (consultant's report to attorney); *Zirn,* 187 Misc., 63 N.Y.S.2d at 440-41 (defense attorney's letter to plaintiff); *Vasquez v. Courtney,* 276 Ore. 1053, 1055-56, 557 P.2d 672, 673 (1976) (sheriff's letter to parole officer conducting presentence investigation); *Beezley v. Hansen,* 4 Utah 2d 64, 286 P.2d 1057, 1058 (1955) (attorney's unfiled deposition). *See also* Restatement (Second) of Torts § 588, Comment a (1977).

The question whether a defamatory statement should be absolutely privileged involves a matter of public policy in which the public interest in free disclosure must be weighed against the harm to individuals who may be defamed. *See Maurice v. Worden,* 54 Md. 233, 253 (1880). The underlying rationale for according an absolute privilege to the defamatory statements made in court by participants in judicial proceedings or to such statements published in documents which have been filed is that such a privilege is necessary to the proper administration of justice. The ultimate purpose of the judicial process is to determine the truth. The investigation, evaluation, presentation and determination of facts are inherent and essential parts of this process. If this process is to function effectively, those who participate must be able to do so without being hampered by the fear of private suits for defamation. As stated by this Court in *Bartlett,* 69 Md. at 226-27, 14 A. at 520:

> "[Defamatory] statements made in any of the pleadings or proceedings in a cause before a court having jurisdiction of the subject are absolutely privileged, even though made maliciously and falsely. This privilege, protecting against a suit for libel or slander, is founded upon what would seem to be a sound public policy which looks to the free and unfettered administration of justice, though as

an incidental result it may, in some instances, afford an immunity to the evil disposed and malignant slanderer.

. . .

To allow such suits to prevail would most effectively deter every one from presenting a well-founded complaint for fear of being pursued with 'infinite vexation.' "

These public policy reasons are equally applicable to defamatory statements published in documents which are prepared for possible use in connection with a pending judicial proceeding but which have not been filed. In *Watson v. M'Ewan,* (1905) A.C. 480 (HL), an English case, a wife sued her husband for a separation on the ground of cruelty. A physician who had examined her sent a report containing defamatory statements to her husband and his attorney. This document was not filed in the pending litigation for separation. The wife subsequently sued the physician for defamation. There, as here, the question presented was whether an absolute privilege applied to a defamatory statement published in a document which was prepared for use by an attorney in connection with a pending judicial proceeding but which had not been filed in that proceeding. In finding that an absolute privilege applied, the Earl of Halsbury, L.C., speaking for the House of Lords, said:

"The ingenious suggestion has been made that although it is true that a witness is protected from an action in respect of evidence actually given in a Court of justice, yet no such protection exists in respect of his attendance before the solicitor. . . .

"It appears to me that the privilege which surrounds the evidence actually given in a Court of justice necessarily involves the same privilege in the case of making a statement to a solicitor and other persons who are engaged in the conduct of proceedings in Courts of justice when what is intended to be stated in a Court of justice is

narrated to them. . . . If it were otherwise, I think what one of the learned counsel has with great cogency pointed out would apply — that from time to time in these various efforts which have been made to make actual witnesses responsible in the shape of an action against them for the evidence they have given, the difficulty in the way of those who were bringing the action would have been removed at once by saying, 'I do not bring the action against you for what you said in the witness-box, but I bring the action against you for what you told the solicitor you were about to say in the witness-box.' If that could be done the object for which the privilege exists is gone, because then no witness could be called; no one would know whether what he was going to say was relevant to the question in debate between the parties. A witness would only have to say, 'I shall not tell you anything; I may have an action brought against me to-morrow if I do; therefore I shall not give you any information at all.' *It is very obvious that the public policy which renders the protection of witnesses necessary for the administration of justice must as a necessary consequence involve that which is a step towards and is part of the administration of justice — namely, the preliminary examination of witnesses to find out what they can prove. It may be that to some extent it seems to impose a hardship, but after all the hardship is not to be compared with that which would arise if it were impossible to administer justice, because people would be afraid to give their testimony."* [*Watson*, (1005) A.C. at 486-87.] (Emphasis added.)

We agree with the expressed underlying rationale for according an absolute privilege, not only to defamatory statements made in court and in documents which have been filed, but also to such statements published in documents which are prepared for use in connection with a pending

judicial proceeding but which have not been filed. The evaluation and investigation of facts and opinions for the purpose of determining what, if anything, is to be raised or used in pending litigation is as integral a part of the search for truth and therefore of the judicial process as is the presentation of such facts and opinions during the course of the trial, either in filed documents or in the courtroom itself. Such evaluation and investigation, and the documents which these activities generate, are directly related to the pending litigation and occur during the course of the judicial proceeding. The people who engage in these activities and who generate such documents must be able to do so without being hampered by the fear of private suits for defamation. Accordingly, any defamatory statement which appears in a document prepared for possible use in connection with a pending judicial proceeding should be accorded an absolute privilege, regardless of whether the document has been filed.

Applying this principle to the instant case produces a clear result. Here, the allegedly defamatory statement was published in a letter from a psychiatrist to an attorney who was then representing the mother in pending divorce litigation. The attorney had solicited the psychiatrist's evaluation of the truthfulness of the child's allegation that his father had abused him, as well as the psychiatrist's opinion as to the advisability of continuing the father's visitation rights. The psychiatrist's evaluation and recommendation were sought for the purpose of determining whether there were probative facts and opinions sufficient to justify raising, in the pending divorce litigation, the issue of a modification of the father's visitation rights. Despite the fact that this document had not been filed in the pending divorce proceeding, it was nonetheless a document prepared for use in connection with the pending divorce proceeding. Under these circumstances, it is manifest that the psychiatrist's letter was directly related to that judicial proceeding, and that the allegedly defamatory statement contained in the letter was published during the course of that judicial proceeding. Accordingly, an absolute privilege

applies to the allegedly defamatory statement published in the psychiatrist's letter to the attorney.[2] We shall affirm.

*Judgment affirmed.*
*Costs to be paid by appellant.*

---

**2.** The only remaining question, whether the trial court erred as a matter of law in granting the psychiatrist's motion for summary judgment with respect to an alleged additional publication of the same defamatory statement, was neither raised nor decided in the trial court. It therefore is not properly preserved for review. Md. Rule 885.