481 A.2d 508

**John J. MINER**

v.

**Joseph A. NOVOTNY.**

**No. 1681, Sept. Term, 1983.**

Court of Special Appeals of Maryland.

Oct. 3, 1984.

Certiorari Granted Jan. 23, 1985.

Allen G. Windsor, Baltimore, with whom was David S. Harris, Baltimore, on brief, for appellant.

Theodore Sherbow, Baltimore, with whom were Henry R. Abrams and Weinberg & Green, Baltimore, on brief, for appellee.

Argued before GILBERT, C.J., and MOYLAN and LISS, JJ.

GILBERT, Chief Judge.

The stage for this appeal was set on June 15, 1215, with the signing of the Magna Charta at Runnymede, in the

shadow of what is now known as Windsor Castle. It remained only for time and circumstance to transport it to Maryland via the First Amendment to the Constitution of the United States.[1] That Amendment provides, in pertinent part:

"Congress shall make no law . . . abridging the . . . right of the people . . . to petition the Government for a redress of grievances."

Having set the scene, we now address the instant case. John J. Miner, a deputy sheriff for Harford County, arrested Joseph A. Novotny and charged him with, "Driving or attempting to drive while intoxicated and/or under the influence of alcohol, drugs and/or controlled dangerous substances," and "failing to keep to the right of center." Md.Transp.Code Ann. § 21–902 and § 21–301 (1984).

Based on the record before us, we infer that matters exacerbated and Novotny was then charged with battery as a result of expectorating on Miner's face. Subsequently, Novotny was released on his own recognizance. Two days later he filed a complaint with the sheriff's office of Harford County alleging that he had been subjected to "police brutality." Apparently, Miner was exonerated of the brutality charges. He then sued Novotny in the Circuit Court for Harford County, asserting defamation, intentional infliction of emotional distress, and abuse of administrative procedures. A demurrer was sustained to each count of the declaration, without leave to amend. Miner has appealed only the count dealing with defamation.

He asserts that the hearing judge erred in two respects, namely: 1) in holding that a complaint of brutality against a law enforcement officer "is absolutely privileged as a petition for redress of grievances under the First Amendment

---

1. First Amendment freedoms are applicable to the States through the Fourteenth Amendment. *Edwards v. South Carolina*, 372 U.S. 229, 235, 83 S.Ct. 680, 683, 9 L.Ed.2d 697, 702 (1963); *DeJonge v. Oregon*, 299 U.S. 353, 364, 57 S.Ct. 255, 260, 81 L.Ed. 278, 284 (1937).

. . . ."; and 2) in sustaining the demurrer without leave to amend.

Miner maintains that the investigation conducted by the sheriff's office into Novotny's complaint was an internal procedure aimed only at ascertaining the validity *vel non* of the charge of brutality. That investigation, Miner says, was not directed at providing any form of redress for Novotny's grievances. Reasoning from that premise, Miner concludes that the First Amendment petitioning right, therefore, has no application to this case. We think Miner exhibits tunnel vision; the petitioning privilege is considerably broader than he perceives it to be.

A case factually similar to the one now before us, *Stern v. United States Gypsum, Inc.*, 547 F.2d 1329 (7th Cir.), *cert. denied*, 434 U.S. 975, 98 S.Ct. 533, 54 L.Ed.2d 467 (1977), was decided by the United States Court of Appeals for the Seventh Circuit. There, Stern, an Internal Revenue Service agent, was in charge of an audit of United States Gypsum (USG). A complaint was filed by USG with Stern's superiors. USG alleged that certain misdeeds were performed by Stern, including an improper settlement offer. Stern then sued USG for defamation, *inter alia,* in federal court under pendent jurisdiction. The district court overruled USG's motion to dismiss on jurisdictional grounds. The appellate court, in reversing, concluded that Stern's complaint stated no actionable federal claim. The Court said:

"The public criticism of governmental policy and those responsible for government operations is at the very core of the constitutionally protected free speech area, *see e.g., Rosenblatt v. Baer*, 383 U.S. 75, 85, 86 S.Ct. 669 [675], 15 L.Ed.2d 597 (1966); *New York Times Co. v. Sullivan*, 376 U.S. 254, 270, 84 S.Ct. 710 [720], 11 L.Ed.2d 686 (1964)." 547 F.2d at 1342.

This Court in *Bass v. Rohr*, 57 Md.App. 609, 471 A.2d 752, *cert. granted*, 300 Md. 88, 475 A.2d 1200 (1984), had before it a matter wherein Rohr filed a complaint against Bass

with the Maryland Home Improvement Commission. That administrative agency, after a review of "all the facts," was not persuaded to charge Bass with a violation of the law and suggested to Rohr that it thought the case was a "civil matter." Bass thought it libelous and slanderous; he sued Rohr for defamation. When he lost in the trial court, Bass appealed. We said that the right to "petition the Government for a redress of grievances, ... rests not on mere public policy or convenience." The petition privilege is among our most precious liberties. *United Mine Workers of America, District 12 v. Illinois State Bar Association,* 389 U.S. 217, 222, 88 S.Ct. 353, 356, 19 L.Ed.2d 426 (1967). When the United States declared its independence from Great Britain and successfully concluded the Revolutionary War, the right of redress was embodied into the Bill of Rights where it has since remained in unaltered form.[2]

We held in *Bass v. Rohr* that the filing and prosecution of the complaint with the Home Improvement Commission were an exercise of the right of petition to redress grievances. 57 Md.App. at 620, 471 A.2d at 758. Earlier, in *Sherrard v. Hull,* 53 Md.App. 553, 456 A.2d 59 (1983), a defamation action arising out of a zoning hearing, we said that "the right to petition protects the freedom to seek redress from all three coordinate branches of government." *Bass v. Rohr* makes crystal clear that petitioning for a redress of grievances applies to executive agencies. 57 Md.App. at 620, 471 A.2d at 758. Beyond doubt, the sheriff's office of Harford County, engaged as it is in law enforcement, is an agency of the executive branch of government. It is clear from *Stern, Sherrard,* and *Bass,*

---

**2.** The Declaration of Independence asserts as one cause for discord between the thirteen United States of America and Great Britain the failure of King George III to address the petitions for grievance brought by the colonies. The Declaration reads, in pertinent part: "In every stage of these Oppressions We have Petitioned for Redress in the most humble terms: Our repeated Petitions have been answered only by repeated injury. A Prince whose character is thus marked by every act which may define a Tyrant, is unfit to be the ruler of a free People."

that the petitioning privilege includes police brutality complaints filed against law enforcement officers of the Harford County Sheriff's Office.[3] It matters not that Novotny's complaint may have been made without substantial justification, *Bass v. Rohr,* or that it was unfair or malicious, *Sherrard v. Hull,* or that it was motivated by self interest, or that it was likely to cause professional injury to Miner, or even that Novotny was pleased by the prospect of causing such injury to Miner. *Stern v. United States Gypsum.*

■ In this country the right of the people to complain to responsible governmental officials about the manner in which the complainant believes himself or herself to have been abused by public officials [4] and other public employees is a fundamental, constitutional one expressly reserved to the people. The First Amendment, as we have seen, expressly reserves to the people the right "to petition the Government for redress of grievances." If that right is denied, our government will no longer be representative of the will of the people, which representation is the cornerstone of our republican form of government. *See United States v. Cruikshank,* 2 Otto 542, 92 U.S. 542, 552, 23 L.Ed. 588 (1875).

■ The trilogy of *Stern, Sherrard,* and *Bass* establishes that it was not error to sustain Novotny's demurrer to Miner's declaration. Whether he should have sustained the

---

**3.** The complaint was filed in a paper writing titled, "Complaint of Brutality," and on a form bearing the legend "H.C.S.D. Form # 120." We interpret that legend to mean "Harford County Sheriff's Department Form # 120."

**4.** That a police officer is a "public official" has long been established. *See Robinson v. Bd. of County Comm'r,* 262 Md. 342, 347, 278 A.2d 71, 74 (1971); *Wilkerson v. Baltimore County,* 218 Md. 271, 146 A.2d 28 (1958); *Harris v. Mayor of Baltimore,* 151 Md. 11, 21, 133 A. 888, 891 (1926); *Macy v. Heverin,* 44 Md.App. 358, 362, 408 A.2d 1067, 1069 (1979); *Karangelen v. Snyder,* 40 Md.App. 393, 395, 391 A.2d 474, 475 (1978).

demurrer without leave to amend poses another question to which we now turn.

*Sherrard* and *Bass* point out that the petitioning privilege is not without bounds, and it was never intended as an unassailable license to defame. Judge Alpert, writing for the Court in *Sherrard,* noted that, "Inherent in the words 'petitioning for redress of grievances' is the concept that the words contained in the petition will relate to the redress sought and that the petitioner is genuinely seeking redress." 53 Md.App. at 574, 456 A.2d at 71. A sham petition, he penned, may never be classified as a petition for a redress of a grievance. What constitutes a sham, however, is decided on a case by case basis. *Id.*

Miner avers that the hearing judge erred in not affording Miner the opportunity to amend the declaration so as to assert an action based on impermissible use of the petitioning process. In short, Miner wants to amend his suit against Novotny so as to state claims in the declaration which, if true, will establish that the complaint was not a valid use of the petitioning process, but was, in fact, a sham. To allow such an amendment under the circumstances is fraught with grave peril. If a public officer may maintain an action against a complainant simply by alleging that the complaint was a sham, the right to petition for redress of a grievance is in serious trouble. A police officer might bring suit against a complainant merely as a means of retaliation. That possibility was noted in *Stern v. United States Gypsum, Inc.,* 547 F.2d at 1345, where the Court said:

> "Defendants in suits such as this one would in all likelihood be obliged to face full-blown litigation in which they must persuade a jury that their complaints, if not true, were at least based on enough facts as to avoid an inference of knowing or reckless falsity. This spectre alone could lead a citizen or taxpayer contemplating the lodging of a good faith complaint to reconsider."

We shall not permit that spectre to appear else the right to petition the government for redress of grievances will be an empty phrase, signifying nothing.

As previously stated, we said in *Sherrard v. Hull* that whether a petition for redress of grievances was filed in good faith or was "a sham must be decided on a case-by-case basis." 53 Md.App. at 574, 456 A.2d at 71. We are of the view that a law enforcement officer may not maintain an action for defamation against a person who, in the exercise of that person's constitutional right to petition for redress of grievances, initiates a complaint against the officer, unless the petition is facially a sham, that is, one that is unsupported by *any* facts. In so holding, we are cognizant that the Court of Appeals in *Berkey v. Delia*, 287 Md. 302, 413 A.2d 170 (1980), *aff'g* 41 Md.App. 47, 395 A.2d 1189 (1978), upheld a police officer's suit against a psychiatrist who wrote to the chief of police professionally questioning whether an officer was "mentally deranged" and requesting that the officer be mentally evaluated. *Berkey v. Delia* was not, however, decided on First Amendment grounds, nor was Berkey's letter to the chief of police a petition for redress of grievances within the meaning of that term.

Miner probably feels that he has been maligned by Novotny, and that the complaint was used by Novotny as a ploy to compel Miner to drop the charges against Novotny. Even if that be true, the constitutional right to petition cannot be made subservient to hurt feelings, bruised egos or tarnished reputations. The First Amendment does not provide that only truthful petitions for redress may be filed. What Judge Eldridge said in his dissent in *Berkey v. Delia*, 287 Md. at 341–42, 413 A.2d 170 (1980), is particularly applicable to the instant case:

"If one wants to be a public servant in a free society, he must develop a thick skin. If the First Amendment means anything, it means that a citizen has a right to criticize, even unjustifiably, the conduct of those operating the government. If the government itself can decide

which criticisms it will tolerate and which it will not, by its courts freely allowing government officials to bring defamation actions against citizens expressing grievances, then an essential aspect of our freedom is impaired."

█ Miner might feel that he has been wronged without a remedy. We are sympathetic to his plight, but he will have to content himself with the knowledge that the federal constitutional right of petitioning for redress of grievances, a right reserved to all people, is superior to the common law right to bring an action of defamation. Md. Const., Decl. of Rights, art. 2.

█ We hold that Judge Cameron did not err in sustaining the demurrer without leave to amend.

JUDGMENT AFFIRMED.

COSTS TO BE PAID BY APPELLANT.