**M. Louis OFFEN, M.D., Plaintiff,**

v.

**Alan I. BRENNER, M.D., Defendant.**

**Civil Case No. RWT 05–1606.**

United States District Court,
D. Maryland.

May 16, 2008.

Edward M. Buxbaum, Emily A. Daneker, Whiteford Taylor and Preston LLP, Baltimore, MD, Erik David Bolog, Barry H. Helfand P.A., Rockville, MD, for Plaintiff.

Neil R. White, Tarra Deshields Minnis, Office of the United States Attorney, Baltimore, MD, for Defendant.

### MEMORANDUM OPINION

ROGER W. TITUS, District Judge.

The publication in 1894 of G.F. Northall's *Folk Phrases of Four Counties* gave wide circulation to the famous children's taunt that boldly asserts "sticks and stones will break my bones, but names will never hurt me." G.F. Northall, *Folk Phrases of Four Counties* 23 (1894). The well-developed law of defamation belies that assertion, at least in terms of pecuniary, as opposed to physical, harm. However, as the law of defamation has evolved, certain privileges have been recognized based on the notion that the potential harm of a defamatory communication may be outweighed by more important public policy considerations.

One of those privileges is applicable to the testimony by a witness in a judicial proceeding. An absolute privilege applies in order to allow witnesses to be free from the apprehension of being annoyed by civil actions resulting from their testimony. Maryland has extended that privilege to administrative proceedings under certain, but not all, circumstances. *Gersh v. Ambrose*, 291 Md. 188, 434 A.2d 547 (1981). This case presents the question of whether, under Maryland law, the Defendant in this case is entitled to the benefit of the absolute privilege. As explained below, the Court concludes that he is, and accordingly his Motion to Dismiss will be granted.

### FACTUAL BACKGROUND

Plaintiff is a physician employed by the United States Department of Health and Human Services (DHHS). Specializing in the field of neurology, he is a medical officer assigned to the Division of Vaccine Injury Compensation (DVIC), where he reviews claims for vaccine-related injuries. His professional activities include regular contact with other members of DHHS, DVIC, the DHHS Office of General Counsel, and the Department of Justice (DOJ). (Compl. ¶ 6.)

After reviewing a claim, Plaintiff transmits his conclusions to the DOJ lawyer assigned to the case. (Compl. ¶ 10.) The DOJ lawyer then determines how to proceed. Plaintiff allegedly has no authority to make substantive or strategic decisions regarding the DOJ's treatment of the claims he reviews.

In 2004, Plaintiff reported his conclusions about a vaccine-related claim to a DOJ lawyer. The lawyer contacted Plaintiff's supervisor, Vito Caserta, for further assistance. Caserta discussed the claim with two other physicians. Defendant, who is a rheumatologist, was one of the physicians Caserta consulted. In May of 2004, Plaintiff allegedly sent materials related to the claim to Defendant for review. In July of 2004, Defendant allegedly sent the following letter to Plaintiff's supervisor:

In the past several months I have had a number of telephone calls and E-mail communications from Dr. Offen, each requesting my private opinion on DVIC cases not officially assigned to me for consultation. . . . The first of the latter type of call was regarding the makeup of our Civilian Expert Immunization Committee (CEIC). The substance of that call was to question me about the process of selection of committee members. I felt that the tone of the questions was accusatory and, in my opinion, defamatory and degrading to DVIC. . . . You will recall that, several months ago, you arranged a telephone conference in which you, Dr. Arnold Gale and I participated. The purpose of that conference was to discuss [the claim]. . . . About 2 months ago Dr. Offen called me, stating that **the case had not been presented in its entirety and that you had misrepresented the facts to induce Dr. Gale and me. . . . My recollection of the call was that Dr. Offen accused you of twisting the facts and of leaving out pertinent information to suit some personal purpose and that he wanted to send me the case record suggesting that my review of the documents would prove that our conclusion was in error. . . .** I have been very disturbed by the tone of Dr. Offen's accusations and the way in which he has **seemed to try to enlist my support in some sort of personal vendetta against DVIC in general and several members of the office in particular.** Indeed I believe that Dr. Offen has had something derogatory to say about each and every medical officer involved. Dr. Offen has also made it quite clear that he

has no respect for the leadership of DVIC. He positively gloated over Thom Balbier's transfer, telling me that Thom had been removed for incompetence and stating that you would be the next to go.

(Compl. ¶ 13) (Emphasis added).

Caserta subsequently initiated formal DHHS disciplinary proceedings against Plaintiff. As a result of the proceedings, Plaintiff was suspended for five days without pay and was stripped of certain professional responsibilities.

### PROCEDURAL HISTORY

Plaintiff filed his complaint on June 13, 2005. On July 25, 2005, Defendant filed a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). Following a hearing, this Court dismissed Plaintiff's Complaint on the basis of absolute testimonial privilege. Plaintiff then appealed to the United States Court of Appeals for the Fourth Circuit. Pursuant to the Maryland Uniform Certification of Questions of Law Act, MD.CODE ANN., CTS. & JUD. PROC. § 12–601 (1974), the Fourth Circuit certified the following question to the Court of Appeals of Maryland:

> [I]n deciding whether a statement that led to an administrative proceeding against a public employee is protected by absolute privilege, should the duties and authority of the employee against whom the statement was made be considered in determining 'the nature of the public function of the proceeding?'

The Court of Appeals of Maryland issued a published opinion answering the certified question with "a qualified yes." *Offen v. Brenner*, 402 Md. 191, 935 A.2d 719, 721 (2007). The court stated that "the duties and authority of the employee are a useful factor, but shall not be determinative, in considering the nature of the public function of the administrative proceeding." *Id.* Accordingly, the Fourth Circuit vacated this Court's dismissal of Plaintiff's Complaint and remanded the case for further consideration in light of the opinion by the Court of Appeals of Maryland.

### STANDARD OF REVIEW

A motion to dismiss should only be granted if "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). The Court must consider all well-pled allegations in a complaint as true and must construe all factual allegations in the light most favorable to the plaintiff. *See Albright v. Oliver*, 510 U.S. 266, 268, 114 S.Ct. 807, 127 L.Ed.2d 114 (1994); *Harrison v. Westinghouse Savannah River Co.*, 176 F.3d 776, 783 (4th Cir.1999). However, the Court need not accept unsupported legal conclusions or legal conclusions couched as factual allegations. *Papasan v. Allain*, 478 U.S. 265, 286, 106 S.Ct. 2932, 92 L.Ed.2d 209 (1986); *District 28, United Mine Workers of America, Inc. v. Wellmore Coal Corp.*, 609 F.2d 1083, 1085 (4th Cir.1979). When ruling on a motion to dismiss, if "matters outside the pleading are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56." Fed.R.Civ.P. 12(b).

### ANALYSIS

Under Maryland law, to state a claim for defamation a plaintiff must allege that "(1) the defendant made a defamatory statement to a third person; (2) the statement was false; (3) the defendant was legally at fault in making the statement; and (4) the plaintiff thereby suffered harm." *Smith v. Danielczyk*, 400 Md. 98, 928 A.2d 795, 805 (2007). A defamatory statement is one "which tends to expose a person to public scorn, hatred, contempt or ridicule, thereby discouraging others in the

community from having a good opinion of, or associating with, that person." *Gohari v. Darvish,* 363 Md. 42, 767 A.2d 321 (2001) (quoting *Rosenberg v. Helinski,* 328 Md. 664, 616 A.2d 866, 871 (1992)).

In this case, Plaintiff alleges that Defendant made false statements to a third party which resulted in damage to his reputation and business relationships. For the purposes of this Motion, the Court will assume without deciding that these allegations make out a claim for defamation under Maryland law.

 However, this does not end the analysis. As noted at the outset of this opinion, Maryland courts have adopted a public policy which mandates that "witnesses should go upon the stand with their minds absolutely free from apprehension that they may subject themselves to an action of slander for what they may say while giving testimony." *Offen,* 935 A.2d at 724 (quoting *Hunckel v. Voneiff,* 69 Md. 179, 14 A. 500 (1888)). Therefore, witnesses in Maryland courts have historically been granted an absolute privilege for statements made in the course of judicial proceedings. *Reichardt v. Flynn,* 374 Md. 361, 823 A.2d 566, 569 (2003) (quoting *Hunckel,* 14 A. at 504). The privilege "extends also to statements that serve to initiate a judicial proceeding." *Offen,* 935 A.2d at 725 (citing *Kerpelman v. Bricker,* 23 Md.App. 628, 329 A.2d 423, 425 (Md. 1974)). Moreover, this absolute privilege "extend[s] beyond the confines of purely judicial proceedings" and may also be applied to statements made in administrative proceedings. *Odyniec v. Schneider,* 322 Md. 520, 588 A.2d 786, 793 (1991) (privilege applied to statements made by doctor when examining patient while preparing to serve as witness in arbitration of medical malpractice claim); *see also Reichardt,* 823 A.2d at 566 (privilege applied to false accusations that a teacher engaged in sexual misconduct); *Imperial v. Drapeau,* 351

Md. 38, 716 A.2d 244 (1998) (privilege applied to letter defendant wrote to the governor accusing Emergency Medical Technician of incompetence).

 Whether the privilege will apply to statements related to administrative proceedings depends on a case-by-case inquiry into "(1) the nature of the public function of the proceeding and (2) the adequacy of procedural safeguards." *Gersh,* 434 A.2d at 551–52. Plaintiff has conceded that "the second prong of the *Gersh* test is satisfied in that adequate procedural safeguards were available." (Hr'g Tr. 26–27, Oct. 19, 2005; Pl's Opp. [Paper No. 25] at 5 n.3.) Therefore, the Court's analysis will be confined to the first prong of the *Gersh* test.

In answering the certified question, the Court of Appeals of Maryland explained that the first prong of the *Gersh* test "implies a further inquiry into the nexus between the socially important interest (the public function) and the proceeding. It requires an examination of the identified public interest, and how it is advanced in the proceeding." *Offen,* 935 A.2d at 725. Consequently, it "may be necessary in some cases to examine the public authority or duties entrusted in the employee [because the duties] and authority attendant to a particular position may determine how much influence an official has over the public from his or her position, which in turn can affect how closely the proceeding serves a public interest." *Id.* However, although "the duties and authority of the employee against whom a statement was made should be considered, [they] are not dispositive." *Id.* at 731.

In *Gersh,* a defendant allegedly made defamatory remarks at a public hearing before a local community relations commission. The Court of Appeals of Maryland recognized that "the absolute privilege afforded judicial proceedings *could*

extend to adjudicatory hearings before administrative bodies." *Offen,* 935 A.2d at 725 (emphasis in original) (citing *Gersh,* 434 A.2d at 549–50). However, the court declined to apply the privilege because "the public benefit to be derived from testimony at Commission hearings [like the one at issue] is not sufficiently compelling to outweigh the possible damage to individual reputations," and because "nothing in the record ... indicate[d] the presence of conditioning devices or safeguards ... which are present in judicial proceedings." *Gersh,* 434 A.2d at 551. Therefore, because the proceeding lacked appropriate procedural safeguards, and the risk to individual reputations was too great to justify immunity for the sake of the negligible public interest advanced by the proceedings, the Court of Appeals refused to apply the privilege to the testimony. *Id.*; *see also, Offen,* 935 A.2d at 725.

In *Miner,* the Court of Appeals applied an absolute privilege to accusations of police brutality which had sparked an administrative hearing. *Miner v. Novotny,* 304 Md. 164, 498 A.2d 269 (1985). The Court of Appeals found that the hearing served an important public function because "society vests its law-enforcement officers with formidable power, the abuse of which is often extremely detrimental." *Id.* at 274–75. Because the hearing had sufficient procedural safeguards, and served "a public function of vital importance," the accusations which led to the administrative hearing were granted an absolute privilege. *Id.*

In *Odyniec,* a doctor examined a patient with a claim before the Health Claims Arbitration Office. *Odyniec,* 588 A.2d at 786. The doctor, who was expected to testify in the arbitration proceedings, told the patient that her treating physician had performed unnecessary medical procedures. *Id.* When the treating physician brought a suit for defamation, the Court

of Appeals held that absolute immunity applied. *Id.* The court emphasized that an absolute privilege will only be extended if "society's benefit from unfettered speech during the proceeding is greater than the interests of an individual who might be defamed during that proceeding." *Id.* at 791. The court then explained that the "evaluation and investigation of facts and opinions for the purpose of determining what, if anything, is to be raised or used in pending litigation is as integral a part of the search for truth and therefore of the judicial process as is the presentation of such facts and opinions during the course of the trial, either in filed documents or in the courtroom itself." *Id.* at 789. Therefore, the "social benefit derived from free and candid participation by potential witnesses in the arbitration process is essential to achieve the goal of a fair and just resolution of claims of malpractice against health care providers," and is essential to "maintaining the integrity of the process itself." *Id.* at 793. Because the arbitration proceedings had adequate procedural safeguards, and the potential harm of the allegedly defamatory statement was outweighed by the "societal value of maintaining the integrity of the [arbitration] process," the Court of Appeals granted absolute immunity to the doctor's statements. *Id.*

In *Imperial,* the Court of Appeals granted immunity to accusations of incompetence made against an EMT. *Imperial,* 716 A.2d 244. The court grounded the public function analysis on the "importance to the public that all medical participants in the emergency medical system be competent." *Id.* at 250. Because "public policy encourages the communication of information to public authorities responsible for maintaining the quality of emergency medical services," and sufficient procedural safeguards existed, the Court of Appeals

held that the statements were entitled to absolute immunity. *Id.* at 250–51.

Finally, in *Reichardt*, the Court of Appeals applied an absolute privilege to accusations of sexual impropriety which were made against a high school teacher. *Reichardt*, 823 A.2d 566. After determining that adequate procedural safeguards existed, the Court noted the strong public interest in ensuring the protection of school children from sexual deviants. *Id.* at 573.

In this case, Defendant allegedly made defamatory statements concerning Plaintiff to Plaintiff's supervisors. These statements generated an administrative inquiry that led to professional sanctions. Although Plaintiff concedes that the administrative proceedings included substantial procedural safeguards, he argues that his position in the government was so inconsequential that the administrative proceedings lacked a discernable public function. Plaintiff's own description of his position in the Complaint paints a very different picture. In his Complaint, Plaintiff alleges that, "[a]fter reviewing the relevant evidence regarding [a] Heptetitis B Claim, Dr. Offen and the retained outside expert communicated their conclusions regarding the merits of the claim to the DOJ attorney responsible for representing the government regarding the Hepatitis B Claim." (Compl. ¶ 10.) The DOJ attorney then determined the appropriate course of action regarding the claim. *Id.* Thus, Plaintiff's alleged role in the determination of vaccine-related claims is akin to that of an expert witness at a trial. Plaintiff reviews the merits of a claim and submits his professional opinion to the lawyers responsible for the case. Although his position is bereft of any authority to dictate the actions taken on the claims, his professional analysis and opinion are crucial to the integrity of the process of resolving claims. As the Court of Appeals of Maryland stated in *Odyniec*, the "evaluation and

investigation of facts and opinions for the purpose of determining what, if anything, is to be raised or used in pending litigation is as integral a part of the search for truth and therefore of the judicial process as is the presentation of such facts and opinions during the course of the trial, either in filed documents or in the courtroom itself." *Odyniec*, 588 A.2d at 789. Therefore, like the doctor in *Odyniec*, or an expert witness at trial, it is of vital public interest that challenges to Plaintiff's credibility and impartiality are not muted by fear of civil liability.

If the administrative proceedings had lacked procedural safeguards, then the potential for reputational harm may have required a different result. However, because the procedural safeguards were concededly adequate, the potential for uncompensated harm to Plaintiff's reputation is outweighed by the societal value of maintaining the integrity of the process for evaluation and adjudication of vaccine-related claims. Accordingly, having considered the duties and authority of the Plaintiff, and having taken into account the importance of the role played by the Plaintiff in the resolution of vaccine-related claims, the Court finds that the administrative proceedings at issue served a paramount public function, and that an absolute testimonial privilege applies.

## CONCLUSION

Maryland law dictates that some legal harms must be allowed to go uncompensated in order to further important public policies. Because the allegedly defamatory statements sparked administrative proceedings which (1) were replete with procedural safe-guards, and (2) concerned both the integrity of DVIC's review of vaccine-related claims and, by extension, the DOJ's handling of those claims, these allegedly defamatory statements are enti-

tled to an absolute privilege. Therefore, Plaintiff's claim must be dismissed. A separate Order follows.

## ORDER

Upon consideration of Defendant's Post–Remand Motion To Dismiss [Paper No. 24], Plaintiff's Opposition thereto, Defendant's Reply, the oral arguments by counsel, the record, and for the reasons stated in the accompanying Memorandum Opinion, it is this 16th day of May, 2008, by the United States District Court for the District of Maryland, hereby

**ORDERED** that Defendant's Post–Remand Motion to Dismiss [Paper No. 24] is **GRANTED,** and it is further

**ORDERED** that judgment for costs be entered in favor of the Defendant, and it is further

**ORDERED** that the clerk's office is directed to close this case.