[906 NYS2d 697]

Denise E. Finkel, Plaintiff, v Michael Dauber et al., Defendants.

Supreme Court, Nassau County, July 22, 2010

### APPEARANCES OF COUNSEL

*Altschul & Altschul*, New York City, for plaintiff. *Ketover & Assoc.*, Garden City, for Leah Herz and others, defendants. *Morris, Duffy, Alonso & Faley*, New York City, for Jeffrey Schwartz and others, defendants. *Acito, Klein Candiloros, P.C.*, New York City, for Melinda Danowitz and others, defendants. *Savona, D'Erasmo & Hyer, LLP*, New York City, for Michael Dauber and another, defendants.

### OPINION OF THE COURT

RANDY SUE MARBER, J.

The motion (motion sequence No. 02) by the plaintiff, pursuant to CPLR 3212, seeking partial summary judgment on the issue of liability and setting the matter down for an immediate trial on the issue of damages, and the cross motion (motion sequence No. 03) by the defendants, Leah Herz, Alan Herz and Ellen Herz, seeking sanctions against the plaintiff, pursuant to 22 NYCRR 130-1.1;* are decided as provided herein.

This action arises out of prurient statements posted by the officers of a Facebook group. The group's information page shows that its name is "90 Cents Short of a Dollar," and lists five officers and six members, five of whom are the officers. The officers are defendants, Michael Dauber, Melinda Danowitz, Leah Herz and Jeff Schwartz, and a nondefendant, Joe Colello. Another member, Alyssa Buono, is also not a defendant here. The listed purpose of the group is "just for fun" and "inside jokes."

Ninety Cents Short of a Dollar (hereafter referred to as Ninety Cents) is a "secret" Facebook group, which has no public content and does not appear on a Facebook member's profile. New members must be invited by an administrator; here, either of the defendants Michael Dauber or Melinda Danowitz. Although Ninety Cents lists only six members or "cents," 10 people are listed as "cents" in the group's "recent news."

The plaintiff alleges that she was defamed by the named defendant members/officers, although she does not allege that the

---

* By stipulation of counsel for the parties, so ordered by the court on May 18, 2010, the cross motion of the defendant, Jeffrey Schwartz (motion sequence No. 04), was withdrawn. The cross motion papers were submitted as opposition to the plaintiff's motion.

secret group's posts are accessible to anyone outside the group. Thus, it is not shown or alleged that access to Ninety Cents' content is available to Facebook users, i.e., that it is not restricted solely to the participant member/officers. The plaintiff is silent in this regard, as are the defendants.

The plaintiff asserts a cause of action for defamation, submitting a copy of posts on a Ninety Cents thread to meet the requirement of submitting in haec verba statements. The plaintiff identifies herself as the 11th cent in the posts. Her name is never used. The following explicit material is necessary for analysis (spelling, punctuation and typos are as in original):

"ooooh i like this group.

"BTW the 11th cent, unbeknownst to many, acquired AIDS while on a cruise to Africa (with another member of the group who we shall leave nameless). While in Africa she was seen fucking a horse. NICHTE NICHTE eleventh cent! I mean you know . . . I kinda felt bad for the eleventh cent . . . but then again I felt WORSE for the horse. . . ." (Leah Herz, Jan. 29, 2007, 5:04 P.M.)

"In regards to the 7th cents comment,,, it was not from an African cruise . . . it was from sharing needles with different heroin addicts, this led to cross 'mojination' which caused the HIV virus . . . she then persisted to screw a baboon which caused the epidemic to spread." (Jeff Schwartz, Jan. 29, 2007, 7:43 P.M.)

"i heard that the 11th cent got aids when she hired a male prostitute who came dressed as a sexy fireman. apparantly . . she was lonely, because her friends no longer associated with her. her sexy fireman prostitute was her only company. in addition to acquiring aids, this nameless 11th cent aquired crabs, and syphillis." (Melinda Danowitz, Jan. 29, 2007, 8:00 P.M.)

"also i heard that the stds [sexually transmitted diseases] she got were os bad that she morfed intot he devil in one of our pictures . . . oops did i reviel the 11th cent?" (Michael Dauber, Jan. 29, 2007, 8:32 P.M.)

The plaintiff avers that Michael Dauber's last post identifies her as the 11th cent because of the devil reference. There is an edited photograph which allegedly depicts the plaintiff posted on Ninety Cents. The photograph, which the plaintiff states is

one of her, shows a pretty young woman smiling, edited to add an ear to the top of her head, and bearing the legend "EVIL HAS GOT A NEW FACE . . . . IT HAS NEVER LOOKED SO TERRIFYING!!!" Although not visible in the photocopy submitted to the court, there is a comment below the photo which states, "the reflection of fire in the eyes adds a nice effect." The plaintiff submits an additional photograph which shows 10 distorted masked costumed characters, none of whose identities are remotely discernible. The plaintiff claims that she is the one with an angry-faced mask, and again alleges that it marks her as the devil.

The following posts regarding Ninety Cents and its officer defendants provide context for the group and its members:

> "trivia + cent fights + gh2 + aids + prostitutes + dead people + hairy chest + joe cursing + masturbation = this wall = life <33" (Melinda Danowitz, Jan. 29, 2007, 10:31 P.M.).

> ". . . your a douche bag thats right . . and since rick james is no longer 11 can i be 11 since . . . yes its one louder than 10 . . ." (Jeff Schwarz, Jan. 30, 2007, 11:16 P.M.).

> "leah . . . stop thinkign ur the shit . . . because ur not THE shit . . . u jsut are shit . . . number 2 . . ." (Michael Dauber, Jan. 31, 2007, 8:57 P.M.).

> "dauber that really hurt. you have left a boo boo on my heart.
> i don't know if i can forgive you. ever.
> especially since you didn't come to jew club
> yesterday.
> robots are more important to you.
> so is screwing ur dog" (Leah Herz, Jan. 31, 2007, 9:28 P.M.).

Turning to the relevant legal analysis, the elements of a cause of action for defamation are a "false statement, published without privilege or authorization to a third party, constituting fault as judged by, at a minimum, a negligence standard, and it must either cause special harm or constitute defamation per se" (*Salvatore v Kumar*, 45 AD3d 560, 563 [2d Dept 2007], *lv denied* 10 NY3d 703 [2008]).

To be actionable, a statement of fact is required, and "rhetorical hyperbole" or "vigorous epithet" will not suffice (*Greenbelt Cooperative Publishing Assn., Inc. v Bresler*, 398 US 6, 14 [1970]). Only facts "are capable of being proven false" (*Gross v*

*New York Times Co.*, 82 NY2d 146, 153 [1993]). Context is key, as assertions that a person is guilty of "blackmail," "fraud," "bribery" and "corruption" in certain contexts could be understood as hyperbole or epithet (*Gross v New York Times Co.*, 82 NY2d at 155). "The infinite variety of meanings conveyed by words—depending on the words themselves and their purpose, the circumstances surrounding their use, and the manner, tone and style with which they are used—rules out . . . a formulistic approach" (*Steinhilber v Alphonse*, 68 NY2d 283, 291 [1986]). Determining whether a given statement expresses fact or opinion is a question of law for the court and one which must be answered "on the basis of what the average person hearing or reading the communication would take it to mean" (*Steinhilber v Alphonse*, 68 NY2d at 290).

Notwithstanding the foregoing, several guidelines have been developed to aid in such determination. The four factors are:

> "(1) an assessment of whether the specific language in issue has a precise meaning which is readily understood or whether it is indefinite and ambiguous; (2) a determination of whether the statement is capable of being objectively characterized as true or false; (3) an examination of the full context of the communication in which the statement appears; and (4) a consideration of the broader social context or setting surrounding the communication including the existence of any applicable customs or conventions which might 'signal to readers or listeners that what is being read or heard is likely to be opinion, not fact' " (*Steinhilber v Alphonse*, 68 NY2d at 292; *Gross v New York Times Co.*, 82 NY2d at 151).

In reaching a determination, however, " 'sifting through a communication for the purpose of isolating and identifying assertions of fact' " is not "the central inquiry" and courts " 'should look to the over-all context in which the assertions were made and determine on that basis "whether the reasonable reader would have believed that the challenged statements were conveying facts about the libel plaintiff" ' " (*Guerrero v Carva*, 10 AD3d 105, 112 [1st Dept 2004]). The *"dispositive inquiry . . . is 'whether a reasonable [reader] could have concluded that [the articles were] conveying facts about the plaintiff' "* (*Gross v New York Times Co.*, 82 NY2d at 152 [emphasis supplied]).

A reasonable reader, given the overall context of the posts, simply would not believe that the plaintiff contracted AIDS by

having sex with a horse or a baboon or that she contracted AIDS from a male prostitute who also gave her crabs and syphilis, or that having contracted sexually transmitted diseases in such manner, she morphed into the devil. Taken together, the statements can only be read as puerile attempts by adolescents to outdo each other.

While the posts display an utter lack of taste and propriety, they do not constitute statements of fact. An ordinary reader would not take them literally to conclude that any of these teenagers are having sex with wild or domestic animals or with male prostitutes dressed as firemen. The entire context and tone of the posts constitute evidence of adolescent insecurities and indulgences, and a vulgar attempt at humor. What they do not contain are statements of fact.

As for the causes of action against the parents, there is no cause of action for negligent supervision of a child, absent an allegation that the parent entrusted the child with a dangerous instrument which caused harm to a third party. The dangerous instrument exception to the rule precluding parental liability for negligent supervision arises from a duty by a parent "to protect third parties from harm resulting from an infant child's improvident use of a dangerous instrument . . . when the parent is aware of and capable of controlling its use" (*Rios v Smith*, 95 NY2d 647, 652 [2001], quoting *Nolechek v Gesuale*, 46 NY2d 332, 336 [1978]). A parent "who entrusts an infant child with a dangerous instrument creates a danger to all society" (*Nolechek v Gesuale* at 341). Parental liability for negligent entrustment "is limited to circumstances where a parent's conduct creates a particularized danger to third persons that is plainly foreseeable" (*Rios v Smith*, 95 NY2d at 652, citing *LaTorre v Genesee Mgt.*, 90 NY2d 576 [1997]). To declare a computer a dangerous instrument in the hands of teenagers in an age of ubiquitous computer ownership would create an exception that would engulf the rule against parental liability.

Insofar as the plaintiff's counsel suggests that the posts constitute cyberbullying, the courts of New York do not recognize cyberbullying or Internet bullying as a cognizable tort action. A review of the case law in this jurisdiction has disclosed no case precedent which recognized cyberbullying as a cognizable tort action.

Facebook is no longer a party defendant, and as the plaintiff has failed to state a cause of action in defamation or negligent entrustment against the named individual defendants, the court

in searching the record (*Merritt Hill Vineyards v Windy Hgts. Vineyard*, 61 NY2d 106 [1984]) grants summary judgment to the defendants and dismisses the complaint.

Accordingly, it is hereby ordered, that the plaintiff's motion (motion sequence No. 02) seeking partial summary judgment on the issue of liability and setting the matter down for an immediate trial on the issue of damages is denied; and it is further ordered, that the cross motion (motion sequence No. 03) by the defendants, Leah Herz, Alan Herz and Ellen Herz, seeking sanctions against the plaintiff pursuant to 22 NYCRR 130-1.1, is denied; and it is further ordered, that upon the court searching the record, summary judgment as against the plaintiff is granted and the complaint is hereby dismissed.

All applications not specifically addressed herein are denied.