McCarthy, J.
Appeals from two orders of the Family Court of Fulton County (Skoda, J.), entered June 24, 2011 and January 31, 2012, which, among other things, dismissed respondent’s application, in four proceedings pursuant to Family Ct Act article 4, to modify a prior order of support.
Petitioner (hereinafter the mother) and respondent (hereinafter the father) are the parents of a son (born in 1991) and a daughter (born in 1993). The parties’ 1997 divorce decree incorporated a stipulation that set forth, among other things, the father’s child support obligations and the parties’ obligations to contribute to the children’s college expenses. In 2010, the mother filed petitions seeking modification of a prior support order and alleging that the father violated an order by, among other things, failing to contribute to college expenses. The father answered, asserting the defense of parental alienation, and filed petitions alleging a violation of a prior court order and seeking to have his child support obligation suspended. Family Court first held a hearing on the father’s defense and determined that the mother did not engage in parental alienation. Following a hearing addressing the remaining aspects of the proceedings, the court, among other things, dismissed the mother’s petition seeking modification of support, but ordered the father to pay 82% of the children’s college expenses. The father appeals.[1]
Family Court did not err in dismissing the father’s parental *1157 alienation defense.[2] Despite the parental duty to support a child until age 21 (see Family Ct Act § 413 [1] [a]), “where the noncustodial parent establishes that his or her right of reasonable access to the child has been unjustifiably frustrated by the custodial parent, child support payments may be suspended” (Matter of Crouse v Crouse, 53 AD3d 750, 751 [2008]; see Matter of Dobies v Brefka, 83 AD3d 1148, 1152 [2011]; Usack v Usack, 17 AD3d 736, 737-738 [2005]). To suspend payments, the father here was required to show that the mother “intentionally ‘orchestrated and encouraged the estrangement of [the father] from the children’ or that she actively interfered with or deliberately frustrated his visitation rights” (Matter of Crouse v Crouse, 53 AD3d at 752, quoting Usack v Usack, 17 AD3d at 739).
While the father regularly called the children and sent them messages at the time of the hearing and for several years prior, he was absent from their lives for at least two years, has not made much effort to schedule or encourage visitation, and did not file a petition to enforce his visitation despite his claims that the mother has interfered for several years. The children both testified that the mother encouraged them to call the father and acknowledge special occasions, but they often chose not to do so. The daughter rarely answered her phone when the father called and rarely responded to his messages. The mother may have told the children to call the father and contacted him to have a visit when she was near his home, but she mainly left it up to the children to contact him and arrange visitation. Considering all of the testimony, it appears that the children’s alienation from the father resulted from a “lack of effort by all concerned,” including the father and both children as well as the mother (Matter of Crouse v Crouse, 53 AD3d at 752). Accordingly, the father did not establish his defense and he was not entitled to a suspension of his child support.
Family Court properly determined that the father must pay his proportionate share of the children’s college expenses pursuant to the parties’ stipulation of settlement. The stipulation is a contract between the parties and must be interpreted by enforcing its plain language if unambiguous, and otherwise by discern *1158 ing the parties’ intentions (see Matter of Frank v Frank, 88 AD3d 1123, 1124 [2011]; Matter of Lerman v Haines, 85 AD3d 1248, 1249 [2011]). The relevant terms of the stipulation provide: “[B]oth parties agree they shall pay for a college education for their children based upon their then existing respective incomes, after the children exhaust all loan, grant and scholarship opportunities . . . Should the parties not be able to agree on the college that the children shall attend, either party reserves the right to apply to a court of appropriate jurisdiction for the decision of the court and the amount of their respective payment.” The father does not argue that he disagrees with the children’s choices to attend certain colleges. He instead contends that he is relieved from paying college expenses altogether because the mother did not confer and agree with him regarding the colleges. The stipulation does not provide him with such relief (see Matter of Frank v Frank, 88 AD3d at 1124). The stipulation allows either parent to seek court intervention concerning the college choice or amount of payment, if the parties are not able to agree. Despite the father being aware that the children were applying to and attending college, he did not seek such intervention, but the mother has done so in one of the instant proceedings. Thus, pursuant to the stipulation, the court was authorized to determine the amount that each party should pay towards the college expenses (see Matter of Lerman v Haines, 85 AD3d at 1249-1250).
The question then becomes whether Family Court correctly calculated the parties’ respective obligations for the college expenses. In the oral stipulation, the mother’s counsel stated that the parties would pay such expenses “based upon their then existing respective incomes.” In a later clarification during the stipulation, however, the father’s counsel specified that “both parties are going to contribute to the college expenses as their incomes allow,” which the mother’s counsel further clarified as “[biased upon the then existing financial ability to pay.” Unfortunately, these so-called clarifications created confusion, because “existing respective incomes” does not necessarily mean the same thing as “as their incomes allow” or “existing financial ability to pay.” We resolve this ambiguity by requiring the parties to pay college expenses based on their financial ability to pay, as this was the last clarification placed on the record during the stipulation, and the two clarifications evince the parties’ intentions to contribute based on their ability to pay, which takes into account more than just gross income.
In determining child support or related expenses, a court may impute income to a parent based on that party’s failure to seek *1159 more lucrative employment that is consistent with his or her education, skills and experience (see Matter of Bianchi v Breakell, 48 AD3d 1000, 1003 [2008]; see also Matter of Rubley v Longworth, 35 AD3d 1129, 1130 [2006], lv denied 8 NY3d 811 [2007]). Imputed income more accurately reflects a party’s earning capacity and, presumably, his or her ability to pay (see Matter of Kasabian v Chichester, 72 AD3d 1141, 1141 [2010], lv denied 15 NY3d 703 [2010]). Thus, imputed income may be attributed to a party as long as the court articulates the basis for imputation and record evidence supports the calculations (see Pulver v Pulver, 40 AD3d 1315, 1318 [2007]).
Here, Family Court accepted the mother’s income as $15,000, without imputing any income to her. She testified that she earned approximately that amount at her part-time job as a tax preparer, but acknowledged that she has a Bachelor’s degree in accounting and could work full time, yet chooses to work reduced hours out of loyalty to her employer. Because we are basing the college expenses on the parties’ ability to pay rather than their actual income, we will impute income to the mother based on her underemployment and ability to earn more (compare Matter of Disidoro v Disidoro, 81 AD3d 1228, 1230 [2011], lv denied 17 NY3d 705 [2011]). Using the mother’s testimony that she earned approximately $15,000 working full time from January through April and two days per week for the remainder of the year, we can extrapolate a full-time salary for her at the same earning rate, resulting in an imputed income of $25,000.[3]
Family Court found that the record did not include a current financial affidavit of the father or other proof to confirm his income, leading the court to rely on his $68,112 income listed in a 2002 order. But the father testified that his annual income was in the “ballpark” of $110,000. The father contends that this proof of his income was only admitted into evidence at a hearing that was limited to addressing the defense of parental alienation, and not the hearing addressing the support petitions generally, leaving no proof of his income. As these proceedings were bifurcated to deal with a potentially dispositive defense prior to reaching the merits of most of the petitions, it seems merely a matter of semantics to describe the testimony as part of two separate hearings as opposed to just one hearing held *1160 over the course of different days to address different aspects of the same petitions. In any event, the court could take judicial notice of the father’s admission in his testimony given at a prior hearing in the same proceeding (see Matter of Benjamin v Benjamin, 48 AD3d 912, 914 [2008]; Matter of Anjoulic J., 18 AD3d 984, 986 [2005]; see also Matter of Xiomara D. [Madelyn D.], 96 AD3d 1239, 1239-1240 [2012]). Thus, we find that $110,000 more accurately reflects the father’s income and ability to pay. Using these income figures to recalculate the parties’ pro rata shares of the children’s college expenses, the mother is responsible for 18.5% and the father is responsible for 81.5%.[4]
Peters, PJ., Stein and Spain, JJ., concur. Ordered that the appeal from the order entered June 24, 2011 is dismissed, without costs. Ordered that the order entered January 31, 2012 is modified, on the law and the facts, without costs, by reducing respondent’s pro rata share of the children’s college expenses to 81.5%, and, as so modified, affirmed.

. Although the father’s appeal from the June 2011 nonfinal order must be dismissed as that order is not appealable as of right (see Family Ct Act § 1112 [a]), his appeal from the January 2012 final order brings up for review the issues raised on appeal from the nonfinal order (see Matter of Nathan O. v Jennifer P., 88 AD3d 1125, 1126 n [2011], appeal dismissed and, lv denied 18 NY3d 904 [2012]).

. The father mistakenly attempts to rely on a provision from a 2005 order that provides him with a basis to seek modification of support if he “is not receiving meaningful expanded unsupervised visitation with the children through no fault of his own.” He repeatedly omits the remainder of that sentence, which states “as per [the counselor who was overseeing therapeutic visitation].” Because the record does not contain any recommendation of the counselor regarding expanded visitation, and because the father bears at least some fault for the lack of visitation, this provision is not helpful to him.

. Despite the large changes in the income considered for each party, the overall percentage attributable to each is only .5% different than that found by Family Court.

. We used a calculation of $15,000 = (X x 4) + (X x 8 x 2/5), with X representing the mother’s monthly earnings, the 4 and 8 representing the number of months and the 2/5 representing a discount for her working only two days per week during the eight months. Under this equation, X = $2,083.33. Multiplying that amount times 12 months yields $24,999.96. We will thus impute an annual income of $25,000.