[3 NYS3d 881]

Deborah Shaw Cornell, Plaintiff, v Scott Cornell, Defendant.

Supreme Court, Monroe County, January 17, 2015

## APPEARANCES OF COUNSEL

*John Nacca* for defendant.

*Ted A. Barraco*, Rochester, for plaintiff.

## OPINION OF THE COURT

RICHARD A. DOLLINGER, J.

"Sticks and stones will break my bones

"But, words will never harm me." (The Christian Recorder, African Methodist Episcopal Church [1862].)[1]

This case tests whether a college-aged son, who engages in vile disparagement of his mother, may strip his father of his right to claim support, including payment of college expenses. In his motion papers before the court, the father seeks child support from the mother, a recoupment of child support paid while the parties negotiated a temporary order, and payment for college expenses. In defense of these claims, the mother argues that her obligations to pay any support—including the cost of college education—are obviated because of the child's calculated estrangement from her. She claims that her son has described her as a "douche bag" and an "asshole," and that this, among other behavior, has caused alienation between her and the son.

The underlying facts are undisputed. The parties entered a separation agreement in 1998 and modified it several times over the next decade. A postjudgment order, issued in 2004,

---

1. (*Offen v Brenner*, 553 F Supp 2d 565, 567 [D Md 2008] [the court describes this adage as a famous "children's taunt" and cites its origin in G.F. Northall, Folk Phrases of Four Counties 23 (1894)].) The Supreme Court in *Chaplinsky v New Hampshire* (315 US 568 [1942]) defined "fighting words" as "those which by their very utterance inflict injury or tend to incite an immediate breach of the peace." (315 US at 572.) In *Downs v State* (30 Md App 253, 259, 351 A2d 166, 170 [1976], *revd* 278 Md 610, 366 A2d 41 [1976]), the intermediate appeals court noted that "[w]e infer that by the use of the phrase 'inflict injury' the [Supreme Court in *Chaplinsky*] was speaking of injury to the psyche, the ego, the id, the emotions." The court added: "The [Supreme] Court, in *Chaplinsky*, implicitly branded as incorrect the old English cliche, 'That sticks and stones will breack my bones but words can never harm me.'" (30 Md App at 259, 351 A2d at 170.) New York courts have invoked the same adage. (*People v Baez*, 118 AD2d 507, 509 [1st Dept 1986, Kupferman, J., dissenting].)

required the father to pay child support because the child lived with his mother. The child changed residences in September 2013 and the father subsequently moved to terminate his support obligation and seek support from the mother. The father now also seeks the mother's proportionate contribution to college costs for the child, which he claims he has paid in full.

The demand to pay college expenses arises under a 1999 order, which provides that both parents will contribute to college expenses in "an amount proportionate to their incomes," provided that the child attends full time, and that both parents approve the college and the course of study. The mother claims she was never consulted regarding the son's choice of colleges or his course of study, and as a result, has no obligation for his college expenses.

The proof in this matter establishes that the father was paying support at the rate of $340 every two weeks for the period from July 2013 through early January 2014. During this time, the son had moved out of his mother's home and was residing exclusively with his father. Under the terms of the separation agreement, the son was supposed to reside with his father during the two summer months and the father was to pay child support during those months. This court sees no justification to permit the father to have credit for these months (July and Aug. 2013). The child, under the agreement, was required to live with his father and the father was still required to pay child support. However, effective September 2, 2013, the child stopped living with his mother and moved in with his father. This move was coincidental with the son leaving for community college. He had enrolled as a full-time student, and decided to live off campus. Under these circumstances, the father no longer had an obligation to pay support.

Under conventional New York law, the child's residing with his father would otherwise trigger the mother's obligation to pay support. However, she argues that the child, through his comments and attitude toward her, has forfeited his right to any support, an issue on which the mother bears the burden of proof. (*Matter of Jurgielewicz v Johnston*, 114 AD3d 945 [2d Dept 2014].) While fundamental public policy in New York dictates that parents are responsible for their children's support until age 21, under the doctrine of constructive emancipation, a child of employable age who actively abandons the noncustodial parent by refusing all contact and visitation may forfeit any entitlement to support. (*Id.* at 945, quoting *Matter*

*of Gold v Fisher*, 59 AD3d 443, 444 [2d Dept 2009]; *see also* Family Ct Act § 413.) The child in this matter is college aged, and clearly employable. (*Rodman v Friedman*, 112 AD3d 537, 538 [1st Dept 2013]; *Matter of Donnelly v Donnelly*, 14 AD3d 811, 812 [3d Dept 2005]; *Matter of Stabley v Caci-Stabley*, 68 AD3d 1682, 1683 [4th Dept 2009, Martoche, J., dissenting].) The central issue is whether the child's conduct in this case can be construed as abandonment, which is more than a mere reluctance to see a parent. (*Matter of Saunders v Aiello*, 59 AD3d 1090, 1091 [4th Dept 2009] [the obligated parent must attempt to achieve a serious relationship with a child]; *Matter of Barlow v Barlow*, 112 AD3d 817 [2d Dept 2013] [no constructive emancipation if the parent, through his misconduct toward the mother and the child, caused the breakdown in communication with the child]; *Matter of Gansky v Gansky*, 103 AD3d 894 [2d Dept 2013] [there was ample support for the court's determination that the father made no serious effort to maintain his relationship with the children during the relevant time period].)

The evidence before the court establishes that the child repeatedly used the word "fuck" in discussing issues with his mother. Based just on the mother's testimony, this court cannot conclude that this word, although used repeatedly, was "deeply offensive"[2] (she never suggested she was offended or disturbed by her son's repeated use of this term). But, the proof of the son's language easily becomes "deeply offensive" when the court evaluates text messages introduced at trial. The mother and son exchanged these messages either slightly before, contemporaneously with, or slightly after the son's decision to move into his father's home. The text messages are only portions of longer messages, but from the text admitted before this court, the son referred to his mother as an "asshole" on several occasions, and a "douche bag" on another. In these text exchanges, before

---

2. Other courts have tried to differentiate between language that is merely "vulgar and mildly offensive" and words that are "deeply offensive." (*Johnson v Hondo, Inc.*, 125 F3d 408, 412 [7th Cir 1997]; *see also McIntyre v Manhattan Ford, Lincoln-Mercury*, 175 Misc 2d 795 [Sup Ct, NY County 1997], *mod* 256 AD2d 269 [1st Dept 1998] [hostile environment included evidence that every sentence used by a supervisor would include the word "fuck" or other similar language].) In both of these cases, the issue was whether use of vulgar language, including repeatedly using the word "fuck," created a hostile work environment. The court can find no guidance on whether a child's repeated use of this term to his mother, even as an adjective, is merely vulgar or deeply offensive, although given the context, this court would conclude that it is the latter.

the court, there is no justification for a high school graduate and college student to refer to his mother in such terms.

Courts that have commented on these two terms described them as displaying an utter lack of taste and propriety. (*Doninger v Niehoff*, 527 F3d 41, 49 [2d Cir 2008] [use of the phrase "douchebags" was vulgar and offensive]; *Finkel v Dauber*, 29 Misc 3d 325 [Sup Ct, Nassau County 2010]; *Bounds v Pinnacle Special Police, Inc.*, 2006 US Dist LEXIS 98170, *27-28 [ED NC, Aug. 29, 2006, No. 7:05-CV-65-F] [the use of the term "douche bag" is a form of "rudely insulting others"]; *Gilbert v DaimlerChrysler Corp.*, 2002 WL 1767672, *15 n 26, 2002 Mich App LEXIS 1168, *48 n 26 [July 30, 2002, No. 227392] [citing Random House Webster's College Dictionary (at 80 [2d ed]), that " 'asshole' is a 'vulgar' term referring to a 'stupid, mean or contemptible person' or 'the worst part of a place or thing' "].) The utterance of these terms has been held to constitute a hostile work environment. (*Bader v Special Metals Corp.*, 985 F Supp 2d 291, 330 [ND NY 2013]; *Gross v Burggraf Const. Co.*, 53 F3d 1531, 1539 [10th Cir 1995] ["It is beyond dispute that evidence that a woman was subjected to a steady stream of vulgar and offensive epithets because of her gender would be sufficient to establish a claim under Title VII"]; *see also Matter of Melody M. v Robert M.*, 103 AD3d 932 [3d Dept 2013] [charitably stated, a mother's use of the term "asshole" to describe her 10-year-old child reflected a lack of insight as to the nature of her conduct toward her oldest child].)

 The use of these terms is indicative of a substantial hatred and/or disrespect for the mother. In this court's view, a child who utters such terms about their parent cannot realistically expect this court to ignore such conduct and order the maligned parent to pay any form of support for the child. A child over the age of 18, seeking reimbursement for college expenses, cannot use such language toward a parent and then, either directly or through his other parent, seek child support, and/or payment of college expenses. No one should be permitted to refer to their mother in such fashion, and then, without recanting or asking for forgiveness, seek the court's assistance to have that person support their future life. This court will not condone such actions by an unworthy son. In addition, there is substantial and uncontroverted evidence that the child has refused all contact with his mother. (*Schulman v Schulman*, 101 AD3d 1098 [2d Dept 2012] [refusing all contact and visitation may constitute abandonment].) The child admitted

that he declined an invitation from his mother to attend Thanksgiving in 2013, and declined to even respond to an invitation for Christmas or his mother's birthday acknowledgment. He further admitted that the only time he had seen his mother during the last year was at a graduation party that he attended, in part, because he was given a financial gift from his mother's parents. This acknowledged behavior—ignoring his mother's entreaties and using despicable language in his reference to her—easily supports the conclusion that the child has abandoned his mother.

This court must consider whether constructive emancipation exists even if the proof fails to establish that the father, who would be paid the support, did not support or condone the child's alienating behaviors. At least one court has held that to suspend his child support payments, a parent was required to show that the other parent "intentionally orchestrated and encouraged the estrangement of [the father] from the children or . . . actively interfered with or deliberately frustrated his visitation rights." (*Matter of Curley v Klausen*, 110 AD3d 1156, 1157 [3d Dept 2013]; *Jurgielewicz*, 114 AD3d at 945; *Matter of Crouse v Crouse*, 53 AD3d 750 [3d Dept 2008].) However, these cases are not, by definition, constructive emancipation matters. In these cases, the parent seeking child support forfeited their rights because they interfered with the child's access to the payor parent. In addition, in the proof before this court, there is no evidence that the father, who seeks the child support and contribution to college expenses, condemned or disciplined his son for using these disgusting terms toward his former wife and the child's mother. Even though the messages were introduced through the testimony of the son and the mother, after the father testified, he never took the stand to refute the content of the text messages or express any disapproval of his son's choice of words or conduct. Although he was not obligated to refute or condemn these comments, his apparent indifference to them reflects a moral ambivalence that seems unworthy of a parent with an obligation to foster a relationship between the child and his mother. (*Matter of Koch v Koch*, 121 AD3d 1201 [3d Dept 2014]; *Matter of Xiomara M. v Robert M.*, 102 AD3d 581 [1st Dept 2013].)

■ Finally, this court must consider whether the child's conduct, which constructively emancipates him, obviates his mother's obligation, as part of her support, to pay for the son's college expenses. The payment of the son's college expenses is

part of the general support obligation and an extension of the child's right to support from his parents. It would be incongruous to find that the son's conduct forfeits his right to child support, but requires his mother to pay his college expenses. In this court's view, any support from the mother is forfeited by the son's callous comments and intemperate behavior.

For these reasons, the father's request for the mother's contribution to college expenses is denied. The child, having severed his ties to his mother in a despicable fashion, is emancipated, as far as the mother is concerned, as his conduct has caused an alienation which cannot be rewarded. The mother has no obligation to pay support for a person—over the age of 18—who acts in this manner. Vulgar words, voiced by a son against his mother, easily justify discontinuing the mother's obligation to support the ungrateful child.

The husband is entitled to recoup his overpayment of child support. The husband was entitled to stop paying support on September 1, 2013, when the child did not return to his mother's home, as the agreement provided. He is entitled to repayment of nine payments (Sept. 1, 2013 through Jan. 15, 2014) of $340 (which he paid every two weeks) or $3,060, minus the $1,000 that both sides agree was reimbursed to him by the Child Support Enforcement Unit after the temporary order was entered in this matter. The wife must repay this amount within 60 days of the entry of the order in this matter.