Yezzi v Small (2022 NY Slip Op 04198)

Yezzi v Small

2022 NY Slip Op 04198

Decided on June 30, 2022

Appellate Division, Third Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided and Entered:June 30, 2022

530755
[*1]Michael Yezzi, Appellant,
v
Jennifer Small, Respondent.

Calendar Date:May 26, 2022

Before:Garry, P.J., Lynch, Aarons, Reynolds Fitzgerald and Ceresia, JJ.

Gordon, Tepper & DeCoursey, LLP, Glenville (Jennifer Powers Rutkey of counsel), for appellant.
Melody A. Mackenzie, PLLC, Troy (Melody A. Mackenzie of counsel), for respondent.

Ceresia, J.
Appeal from an order of the Supreme Court (Auffredou, J.), entered December 19, 2019 in Washington County, which, among other things, granted defendant's motion to modify the parties' separation agreement.
Plaintiff (hereinafter the father) and defendant (hereinafter the mother) were married in 1993 and have two children, born in 2004 and 2006. In 2012, the parties signed a separation agreement which resolved, among other things, the issues of child custody and child support. The parties then attempted, unsuccessfully, to agree on revisions to certain terms in the agreement. In 2014, the father commenced this action for divorce and, following extensive litigation regarding the separation agreement,[FN1] Supreme Court issued a judgment of divorce that incorporated, but did not merge, the separation agreement. The mother subsequently moved for modification of the custody and child support arrangements, among other things. The parties resolved the custody issue by changing the custody arrangement, and the court then held a hearing on child support. Following the hearing, the court issued an order in December 2019 imputing income to the father and ordering him to pay child support and health insurance premiums, both of which were retroactive, as well as a share of the unreimbursed medical expenses and childcare expenses. The court also directed the father to pay child support arrears and counsel fees. The father appeals.
Preliminarily, the mother argues that the appeal should be dismissed on the ground that it was improperly taken from the December 2019 order even though Supreme Court issued an amended order in April 2020. However,we elect to exercise our discretion to treat the father's appeal as having properly been taken from the amended order, issued after the father filed his notice of appeal, inasmuch as the amended order is substantially the same as the original and the mother has made no claim of prejudice (see CPLR 5520 [c]; Matter of Ranieri v Xerox Corp., 192 AD3d 1289, 1290 n 1 [2021]; contra Small v Yezzi, 197 AD3d 1399, 1401 [2021]).
Turning to the issue of whether the mother was entitled to a modification of child support, the mother, as the party seeking to modify a separation agreement that was incorporated, without merger, into a divorce decree, bore the burden of establishing a substantial change in circumstances (see Domestic Relations Law § 236 [B] [9] [b] [2] [i]).[FN2] The separation agreement provided that, because the parties were entering into "a true 50/50 custodial arrangement" and the children's needs were adequately being met in each household, there would be no child support payment but, instead, the parties would operate a joint checking account to cover the children's expenses. Agreeing that their respective annual incomes at that time were $65,000 for the father and $90,000 for the mother, the parties decided that they would deposit $1,300 into the account each month, with the father contributing $520 and the [*2]mother contributing $780. The parties also indicated that the proportions of their respective contributions could be adjusted based upon changes in their incomes.
However, in 2018, the previous 50/50 custodial arrangement changed, as reflected in a stipulated order in whichthe partiesagreed to a significant reduction in the father's parenting time to only two days per week and one weekend per month for 10 months of the year. Further, the mother testified at the hearing that the father had not consistently contributed to the joint account, and she submitted an email from the father in which he stated that he would no longer make monthly contributions to the account because he did not deem them necessary. According to the mother, as a result of the father's decreased contributions and unwillingness to discuss financial concerns, she had to pay for many of the children's expenses on her own and was unable to afford such things as braces and summer camp for the children, while the father continued to enjoy a lavish lifestyle. In light of the foregoing, and paying due deference to Supreme Court's credibility determinations (see Matter of Terry I. v Barbara H., 69 AD3d 1146, 1147 [2010]), we find that the record supports the court's determination that the mother demonstrated a substantial change in circumstances to justify a modification of child support (see Matter of Gravlin v Ruppert, 98 NY2d 1, 6 [2002]; Matter of McCormick v McCormick, 97 AD3d 682, 683 [2012]).
We now turn to Supreme Court's determination of the parties' respective incomes and calculation of child support. A court is permitted to impute income to a party "based on [the] party's earning capacity, as long as the court articulates the basis for imputation and the record evidence supports the calculations" (Johnson v Johnson, 172 AD3d 1654, 1656 [2019] [internal quotation marks and citation omitted]; see Matter of Curley v Klausen, 110 AD3d 1156, 1159 [2013]; Pulver v Pulver, 40 AD3d 1315, 1318 [2007]). "A court is not bound by a party's account of his or her own finances, and where a party's account is not believable, the court is justified in finding a true or potential income higher than that claimed" (Harris v Schreibman, 200 AD3d 1117, 1121 [2021] [internal quotation marks, brackets and citations omitted]; see Matter of Barnett v Ruotolo, 49 AD3d 640, 640 [2008]). When making the determination to impute income, "[t]he trial court is afforded considerable discretion . . . and [its] credibility determinations will be accorded deference on appeal" (Harris v Schreibman, 200 AD3d at 1121 [internal quotation marks and citations omitted]).
Here, Supreme Court calculated that the father's total annual income was $170,014. In arriving at that figure, the court dismissed as not credible the father's assertion that his income averaged only $9,162 per year, noting that the father had, by his own admission, received significant benefits from his farm business that he did not report [*3]as income. The court proceeded to impute income to the father in several categories. First, the court noted that the following personal expenses of the father had been paid by the business: $26,104 in rent for a New York City apartment; $4,887 in expenses for a Volvo automobile; $3,972 in expenses for a Dodge pickup truck; $5,000 in health insurance; $4,611 in cell phone expenses for the father and his family members, whom he included on his cell phone plan; and $6,890 in utilities for an apartment on the farm in which the father's aunt resided free of charge. The court added these expenses together and then conservatively attributed only two thirds of the total, or $34,309, as income to the father. The court also included in the father's income the sum of $73,705, constituting the father's draw from the business, and $12,000 as the value of rent that could have been received from the aunt's apartment.
These figures were supported by testimony from the mother, the father, his tax preparers, and one of his employees, as well as voluminous financial records received in evidence. Although Supreme Court could have chosen to impute lower amounts to the father, it could also have decided to impute additional income to him in the form of benefits he received from the business for such things as life insurance, restaurant meals, food, travel, and payments toward his debts and taxes. Further, to the extent that the father testified that some of the expenses were attributable to the business, the court was under no obligation to credit this aspect of his testimony, particularly given that the father had inconsistently reported his income on tax returns and various credit applications. We are satisfied that the court's imputation of income in the foregoing amounts was proper (see Johnson v Johnson, 172 AD3d at 1656; Pulver v Pulver, 40 AD3d at 1318).
However, we reach a different conclusion regarding Supreme Court's determination to impute an additional $50,000 in income to the father based upon his earning potential as a result of having obtained a Juris Doctorate degree and a Master's degree in public health. The court has the discretion to impute income to a party "based on that party's failure to seek more lucrative employment that is consistent with his or her education, skills and experience" (Matter of Curley v Klausen, 110 AD3d at 1158-1159), but there must be "sound and substantial support" in the record for such imputation (McAuliffe v McAuliffe, 70 AD3d 1129, 1131 [2010] [internal quotation marks and citation omitted]).
According to the father's testimony, he had never practiced law, and the last time he held a job that was directly related to his Master's degree was in 2004. The record was devoid of any evidence providing a basis for Supreme Court's finding that the father could earn $50,000 by entering the job market with these advanced degrees. Moreover, we note that the father was not obligated to utilize his degrees "when, as [*4]here, [he] was pursuing a plausible means of support" by running his farm business (Matter of Hall v Davis, 176 AD3d 1374, 1376 [2019]), and there was no proof that the father could have used his degrees to earn $50,000 in additional income while simultaneously operating the farm, as the court's order contemplates. The record thus lacks a sufficient basis beyond mere speculation for imputing this income, and we will exercise our authority to recalculate child support accordingly (see Matter of Susko v Susko, 181 AD3d 1016, 1021 [2020]; Kelly v Kelly, 140 AD3d 1436, 1438 [2016]).
Reducing the father's income by $50,000 and readjusting it for FICA, we calculate that the father's child support obligation with respect to the parties' income below the statutory cap is $1,634 monthly. As for the parties' income above the cap, having reviewed the record, we find it appropriate, as did Supreme Court, to apply the statutory percentage of 25% for two children (see Domestic Relations Law § 240 [1-b] [f]; Decker v Decker, 148 AD3d 1272, 1274 [2017]; Arthur v Arthur, 148 AD3d 1254, 1257 [2017]). Thus, the father's monthly child support obligation over the statutory cap is $694, for a total monthly obligation of $2,328.
With respect to the issue of counsel fees, although the father did not file any opposition to the mother's fee application, thereby failing to preserve his challenge to the fee award, we nevertheless find it appropriate in this instance to review the issue in the interest of justice (see Hill v Hill, 74 AD3d 1891, 1891 [2010]). That said, in our view, Supreme Court improvidently exercised its discretion in awarding the mother counsel fees in the sum of $50,000 (see Button v Button, 165 AD3d 1528, 1534 [2018]). "When exercising its discretionary powers in this regard, a court should review the financial circumstances of both parties together with all the other circumstances of the case, which may include the relative merit of the parties' positions as well as the complexity of the case and the extent of legal services rendered" (Hughes v Hughes, 200 AD3d 1404, 1410-1411 [2021] [internal quotation marks and citations omitted]).
The mother's counsel submitted a fee application stating that the mother had incurred $66,437.50 in counsel fees [FN3] and $1,831.77 in litigation costs, and requesting an award of not less than $50,000 in fees and costs. Supreme Court did not hold a hearing on the fee application and instead made a summary award of $50,000 that lacked any explanation as to how the court arrived at that figure or whether the requested fees were reasonable under the circumstances. Therefore, we remit the matter to Supreme Court for a hearing with respect to the mother's counsel fee application (see Ferris v Ferris, 121 AD3d 1544, 1545 [2014]; Stanley v Hain, 38 AD3d 1205, 1207 [2007]; Kiprilova v Kiprilov, 255 AD2d 362, 363 [1998]).
The father's additional arguments do not warrant extended discussion. Contrary to the father's assertion[*5], the separation agreement did not expressly contemplate that the father would make no contribution to the cost of the children's health insurance and, therefore, it was not improper for Supreme Court to direct him to retroactively pay an equal share of such premiums. As for the father's argument concerning the alleged punitive nature of the court's directive that he pay child support arrears in two lump sums within 60 days, this was rendered moot when the court amended its order to direct the father to make monthly payments toward the arrears until paid in full (see Matter of Kimberly G. [Natasha G.], 203 AD3d 1418, 1419 [2022]; Jeffrey P. v Alyssa P., 202 AD3d 1409, 1412 n 1 [2022]). To the extent not specifically addressed herein, the father's remaining contentions have been considered and found to be unpreserved and/or without merit.
Garry, P.J., Lynch, Aarons and Reynolds Fitzgerald, JJ., concur.
ORDERED that the order is modified, on the law, without costs, by reversing so much thereof as determined plaintiff's child support obligation and granted defendant's counsel fee application; plaintiff's monthly child support obligation is reduced to $2,328; matter remitted to the Supreme Court for a hearing on defendant's counsel fee application; and, as so modified, affirmed.

Footnotes

Footnote 1: The litigation included a plenary action commenced by the mother that set forth causes of action to set aside or reform the separation agreement, although those causes of action were later discontinued (see Small v Yezzi, 197 AD3d 1399, 1401 [2021]).

Footnote 2: Given that the parties' separation agreement was executed subsequent to the effective date of the 2010 amendments to the Domestic Relations Law (L 2010, ch 182, §§ 7, 9), the mother was not required to meet the heightened burden of demonstrating an unreasonable and unanticipated change in circumstances resulting in concomitant need (see Matter of Khost v Ciampi, 189 AD3d 1409, 1410 [2020]; Bishop v Bishop, 170 AD3d 642, 643-644 [2019]). To the extent that this Court has used that standard in cases involving a separation agreement that postdated the effective date of the 2010 amendments, those cases should not be followed.

Footnote 3: The origin of this figure is unclear, as the four legal bills attached to the application showed a total of $91,210 in counsel fees.